**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| APRIL MCLEAN, | : | CIVIL CASE NO. |
|     Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| HEALTH CENTER, CORRECTIONAL | : | |
| MANAGED HEALTH CARE. | : | |
|     Defendant. | : | DECEMBER 2, 2015 |

<u>**COMPLAINT**</u>

**I.    PRELIMINARY STATEMENT**

1. The plaintiff, April McLean, a psychologist employed by the defendant, University of Connecticut Health Center, Correctional Managed Health Care, seeks declaratory, injunctive and equitable relief, and compensatory damages, and costs and attorney fees against the defendant, University of Connecticut Health Center, Correctional Managed Health Care, pursuant to Title VII of the Civil Rights Act of 1964, as amended, to redress the unlawful retaliation to which the plaintiff had been subjected on account of her filing a sexual harassment complaint against Brian Liebel ("Liebel"), the defendant's Health Services Administrator ("HSA"), at Osborn Correctional Institution.

II.     **JURISDICTION**

2.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e,
    et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

3.  Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. §
    1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 2201(a), and Title 42
    U.S.C. §2000e-5(f).

4.  All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil
    Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), have occurred or have been
    complied with in the following manner:

    i.   A charge of employment discrimination and unlawful retaliation was filed on
         or about October 9, 2014, with both the State of Connecticut Commission on
         Human Rights and Opportunities and with the United States Equal
         Employment Opportunity Commission, which filing was within 180 days, in
         the case of the former, and 300 days, in the case of the latter, of the
         commission of the unlawful employment practices alleged therein;

    ii.  On or about June 29, 2015, after the plaintiff had been constructively
         discharged, she filed an amended charge of discrimination and unlawful
         retaliation on or about June 29, 2015, with both the State of Connecticut
         Commission on Human Rights and Opportunities and with the United States

Equal Employment Opportunity Commission, which filing was within 180

days, in the case of the former, and 300 days, in the case of the latter, of the

plaintiff's constructive discharge;

   iii. On November 9, 2015, the plaintiff was issued a "Notice of Right to Sue " by

the United States Equal Employment Opportunity Commission. *Exhibit 1.*

   iv. On November 13, 2015, the State of Connecticut Commission on Human

Rights and Opportunities issued the plaintiff a "Release of Jurisdiction."

5. Declaratory, injunctive, compensatory and equitable relief is sought pursuant to Title

28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g).

6. Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k),

and Title 42 U.S.C. §1988.

## III.   VENUE

7. This action properly lies in the District of Connecticut pursuant to Title 42 U.S.C.

§2000e-5(f)(3), because the unlawful employment practices of which the plaintiff

complains were committed in this judicial district.

## IV.   PARTIES

8. The plaintiff is a citizen of the United States and resides in the State of Connecticut.

9. The plaintiff is an "employee" as defined by Title VII of the Civil Rights Act of 1964,

as amended.

10. The defendant is an administrative agency of the State of Connecticut.

11. The defendant employs more than fifteen individuals.

12. The defendant is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

13. The defendant is an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

V.    **STATEMENT OF FACTS**

14. The defendant provides professional mental health services to the inmates at Osborn Correctional Institution.

15. Commencing on March 9, 2012, the defendant employed the plaintiff as a Supervising Psychologist I, assigned to Osborn Correctional Institution.

16. Brian Liebel served as the defendant's Health Services Administrator at Osborn Correctional Institution, and exercised overall supervision of the plaintiff's employment.

17. Commencing on or about December 20, 2012, the plaintiff became the victim of Liebel's sexually harassing conduct, when he started referring to the plaintiff as "Hon."

18. At about the same time, Liebel began inquiring about the plaintiff's private, personal relationships, inquiring, in one particular instance, if the plaintiff was sleeping with an

employee of the Department of Corrections, a correctional officer, holding the rank of Captain.

19. After learning of Liebel's inquiries into her private life, the plaintiff requested in numerous email communications to Liebel, that he stop making such inquiries.

20. After receiving the demands from the plaintiff that he stop his gender demeaning inquiries into her private life, Liebel retaliated against the plaintiff by being dismissive of her and/or undermining her position as a psychologist in front of her co-workers, and inmates by questioning her decisions as a psychologist.

21. Unlike the plaintiff, Liebel had no education, training, or experience as a psychologist.

22. Liebel further retaliated against the plaintiff when he excluded her from the "Supervisor's Meetings," which she had previously attended.

23. The plaintiff, as the Supervising Psychologist, was responsible for the mental health treatment at Osborn Correctional Institution, and should have been included in any tours, as required by the Department of Corrections Administrative Directives.

24. The plaintiff kept both Robert Berger, M.D., Statewide Director of Mental Health and Psychiatric Services, and Paul Chaplin, Ph.D., Director of Psychological Services, fully apprised of Liebel's retaliatory conduct.

25. Liebel further retaliated against the plaintiff when he downgraded the plaintiff's September of 2013 Service Rating, in the area of "Cooperation" without ever voicing previous concerns about this aspect of the plaintiff's job performance.

26. When Drs. Berger and Chaplin confronted Liebel regarding downgraded category, Liebel stated that it was the result of the plaintiff's failure to attend weekly "Supervisor's Meetings."

27. Liebel's assertion about the plaintiff's attendance at supervisor's meetings was false, since Liebel had either cancelled the meetings or excluded the plaintiff from attending the meetings.

28. The dismissive, condescending, and harassing behaviors continued for another year, with the plaintiff frequently expressing concerns to both Drs. Chaplin and Berger on multiple occasions about H.S.A. Liebel's treatment toward her.

29. As a result of voicing her opposition to the retaliatory behavior of Liebel, he once again downgraded her September of 2014 Service Rating in two areas (Cooperation and Knowledge of Work).

30. Drs. Berger and Chaplin objected to the ratings and insisted that he raise the Knowledge of Work from "Good" to "Excellent."

31. Liebel, as noted above, did not possess the knowledge, skills, or experience to downgrade the category, "Knowledge of Work," from the Excellent rating that the plaintiff's clinical supervisors had given her.

32. Liebel issued the plaintiff counseling memos, falsely accusing the plaintiff of violating the defendant's attendance policy.

33. The first mention of the alleged concerns with the plaintiff's attendance (four sick days in six months—Liebel untruthfully alleged to be five sick days) was not brought to the plaintiff's attention until mid-September of 2014.

34. Contrary to the defendant's policies which require supervisors to have "Quarterly Supervision" meetings with all staff, in the almost three years that the plaintiff worked at Osborn Correctional Institution under Liebel, Liebel did not afford the plaintiff a single opportunity to have a quarterly supervision meeting to address any of his fabricated concerns.

35. The quarterly supervision meetings are required by the defendant's policy and are meant to address concerns throughout the year and prior to service ratings being issued.

36. The plaintiff directly asked during the September 2013 review of her service rating to have weekly individual meetings with Liebel to ensure that there were not any concerns in the future of which she was not aware.

37. Liebel agreed to the meetings, and then failed to ever meet with the plaintiff.

38. The plaintiff was not given a copy of Liebel's "counseling letter" mentioning that she would be receiving a downgraded Service Rating for "Attendance Issues" until after she submitted a rebuttal to the defendant regarding her Service Rating.

39. On October 7, 2014, the plaintiff filed a complaint with the defendant's Office of Diversity and Equity ("ODE") and the defendant's Office of Labor Relations in which she complained about the sexual harassment to which she was subjected by Liebel, as well as retaliation to which she had been subjected after telling Liebel that his behavior was inappropriate and must cease at once.

40. The plaintiff did not immediately address Liebel about his referring to her as "Hon," as she feared further retaliation.

41. As the plaintiff had feared, immediately after filing her complaint, the defendant unilaterally transferred the plaintiff to Northern Correctional Institution.

42. Northern Correctional Institution is known to be the least desirable facility at which to be assigned.

43. The plaintiff was transferred to Northern Correctional Institution to punish and retaliate against her for opposing Liebel's sexual harassing conduct as well as his retaliatory behavior.

44. The plaintiff was directed to move to Northern Correctional Institution first by a phone call from Dr. Paul Chaplin on October 1, 2014, followed by a letter from Sylvia Flickinger, the defendant's human resources representative.

45. Department of Corrections' administration expressed concern to the defendant that 1) the defendant's policies state that the "victim" cannot be moved unless he or she agree to that option; 2) That several witnesses to Liebel's treatment of the plaintiff remained at Osborn Correctional Institution and voiced fear of retaliation.

46. As such, contrary to the false claims of the defendant that it had also reassigned Liebel, Department of Corrections' administration demanded that Dr. Robert Trestman, the defendant's executive director, remove Liebel from Osborn Correctional Institution.

47. Trestman refused to relocate Liebel, but after five more victims alleged that they had been harassed by Liebel, Dr. Trestman finally relented and removed Liebel from Osborne Correctional Institution on October 20, 2014, at the insistence of the Department of Corrections.

48. While the plaintiff was moved to what is known to be the lease desirable facility in the state for a female staff member, Liebel was not directly assigned anywhere and spent a significant amount of the time on vacation followed by a substantial portion

of time in Central Office and then was trained at Cybulski and Willard Correctional Institutions.

49. As previously stated, Liebel's assignment to the Department of Corrections' Enfield facility did not occur until well into the investigatory process and after he attempted to intimidate the plaintiff, and physically blocked her path of exit, while they both were assigned to be at Enfield at the same time

50. After transferring the plaintiff to Northern Correctional Institution, the defendant further retaliated against the plaintiff when it removed her from the Vet Dogs Program, which she had invested her time and energy into making the program a success.

51. On November 10, 2014, the plaintiff received an email from Berger informing the plaintiff that she would no longer be allowed to participate in the Vets Program.

52.  Besides having invested time and energy into the program, it was the only chance the plaintiff had to be out of the environs of the highly stressful assignment to Northern Correctional Institution.

53. The defendant, by taking the Vets Dogs Program from the plaintiff assured that the plaintiff would be assigned to Northern Correctional Institution, full time, without any relief from its brutal environment.

54. The defendant untruthfully claimed that it had terminated the plaintiff's assignment to the Vets Dogs Program out of concern that the assignment could inadvertently result in the plaintiff having contact with Liebel, when in fact, by assigning the plaintiff to Northern Correctional Institution, the defendant had assured that the plaintiff would be further harassed by Liebel.

55. On October 23, 2014, Liebel arrived at the Department of Corrections' Enfield facility, where he was stationed for the day.

56.  As the plaintiff was responsible for the mental health care at the Department of Corrections' Enfield facility, it was aware that Liebel would have contact with the plaintiff.

57. In addition, the plaintiff had emailed her schedule for that day to the defendant, and had copied Liebel in order to avoid any inadvertent contact with him.

58. While at Department of Corrections' Enfield facility on October 23, 2014, Liebel attempted to intimidate the plaintiff by physically blocking her exit from an office; standing at the end of the hall in an intimidating posture; staring at the plaintiff as she moved about the unit, and questioning her about her time there.

59. The ODE produced a biased report that found no violation of Department of Correction Administrative Directives."

60. The ODE investigation found that the use of the word "Hon" is not gender specific, but there are no male employees who were referred to as "Hon" by Liebel.

61. The plaintiff found the term to be demeaning and made her extremely uncomfortable.

62. On October 13, 2014, the plaintiff wrote a letter to the Governor of the State of Connecticut complaining about the sexual harassment and retaliation to which she had been subjected.

63. By letter dated November 17, 2014, the plaintiff was informed by Scott Semple, the then Interim Commissioner of the Department of Corrections, that the Department of Corrections would conduct its own investigation of the plaintiff's complaint.

64. On February 27, 2015, Judith Garcia, Equal Employment Opportunity Specialist-2 for the Department of Corrections, informed the plaintiff that she would be returned to her original facility, and she would no longer have to report to Liebel.

65. Despite the actions of the Department of Corrections, the defendant continued to subject the plaintiff to retaliatory actions.

66. The plaintiff was unreasonably denied a paid week off for training, to which she was entitled to by contract.

67.  When the plaintiff requested that she be provided an unpaid week off to attend the training, which was common practice, it was approved by the new Health Services Administrator, but denied by Central Office for "facility need," despite there being adequate coverage in her absence.

68. Because of the continuing retaliation to which the plaintiff was subjected by the defendant, she had no other choice but to resign her position on March 15, 2015.

69. The plaintiff was unreasonably denied a paid week off for training, to which she was entitled under the terms of the collective bargaining agreement which governed the terms and conditions of her employment.

70.  When the plaintiff requested that she be provided an unpaid week off to attend the training, which was common practice, it was approved by the new Health Services Administrator, but denied by Central Office for "facility need," despite there being adequate coverage in her absence.

71. After being physically confronted by Liebel, even while the defendant was supposedly conducting an investigation into his conduct toward the plaintiff, the assignment of the plaintiff to Northern Correctional Institution, the denying the plaintiff the training to which she was entitled, and depriving the plaintiff of the only assignment that provided her relief from the harsh environment at Northern Correctional Institution, the abusive environment to which the defendant subjected

the plaintiff became so intolerable that the plaintiff resigning from her employment with the defendant was the appropriate response.

72. Because of the continuing retaliation to which the plaintiff was subjected by the defendant, the plaintiff had no other choice but to resign her position on March 15, 2015.

**VI.**     **FIRST CAUSE OF ACTION (Retaliation For Opposing Unlawful Sexual Harassment In Violation of Title VII of the Civil Rights Act of 1964, as amended)**

73-144. The plaintiff incorporates as if re-alleged paragraphs 1 through 72.

145.     The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the unlawful gender discrimination to which she was subjected by Liebel.

146.     The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the unlawful gender discrimination when it retaliated against her for filing a sexual harassment complaint with the defendant's ODE.

147.     The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the unlawful gender discrimination when it retaliated against her for filing a gender discrimination and unlawful retaliation complaint with the Connecticut Commission on Human Rights and Opportunities, and the United States Equal Employment Opportunity Commission.

148.   The defendant discriminated against the plaintiff on the basis of activity protected under the provisions of Title VII of the Civil Rights Act of 1964, as amended, when it retaliated against her for opposing unlawful gender discrimination and retaliation.

149.   Because the plaintiff's opposition to the sexually harassing conduct of Liebel was a determinative factor in the retaliatory and harassing manner in which the plaintiff was treated by her supervisors, the defendant violated Title VII of the Civil Rights Act of 1964, as amended.

150.   The defendant engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

151.   A reasonable employee would find these retaliatory actions taken against the plaintiff to be materially adverse.

152.   The defendant's retaliatory actions have caused the plaintiff to suffer humiliation, embarrassment and emotional distress as well as an economic loss of compensation.

153.   The defendant's retaliatory actions have caused the plaintiff to resign from her position, and to suffer economic losses.

154.   Since the defendant retaliated against the plaintiff because of the sexual harassment complaints which she filed against the defendant, the defendant violated the anti-retaliatory provisions of Title VII of the Civil Rights Act of 1964, as amended.

155.   The defendant engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

## VII.    PRAYER FOR RELIEF

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

As to the first and second causes of action:

      i.   Declare the conduct engaged by the defendant to be in violation of the plaintiff's

           rights under Title VII of the Civil Rights Act of 1964, as amended;

      ii.  Award plaintiff compensatory damages;

      iii.  Award plaintiff economic damages;

      iv.  Award plaintiff costs and attorney fees; and

      v.  Grant such other and further relief as the Court may deem just and proper.

## VIII.    JURY DEMAND
### THE PLAINTIFF REQUESTS A TRIAL BY JURY.

THE PLAINTIFF – APRIL MCLEAN

BY/s/ Thomas W. Bucci
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
thomasbucci@earthlink.net



EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   April McLean
4 Park Terrace
Hartford, CT 06106

From:   Boston Area Office
John F. Kennedy Fed Bldg
Government Ctr, Room 475
Boston, MA 02203

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2015-00177 | Anne R. Giantonio, Intake Supervisor | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kenneth An*                    NOV 09 2015

Enclosures(s)                **Feng K. An,**
**Area Office Director**          *(Date Mailed)*

cc:

CONN., UCONN HEALTH CENTER
P.O. Box 4035
263 Farmington Avenue
Farmington, CT 06034

Thomas W. Bucci
WW&B
Willinger Willinger & Bucci, P.C.
Attorneys At Law
855 main Street
Bridgeport, CT 06601



PLAINTIFF'S EXHIBIT 2
ALL-STATE LEGAL

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

April McLean
**COMPLAINANT**

vs.

University of Connecticut Health Center
**RESPONDENT**

CHRO No. 1540126

EEOC No. 16A-2015-00177

### RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action must be served on the Commission by email at ROJ@ct.gov or, if you do not have access to email, at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** November 13, 2015

_Tanya A. Hughes_
Tanya A. Hughes, Executive Director

cc: Thomas W. Bucci, Esq., via email: tbucci@wwblaw.com
Lynn D. Wittenbrink, Assistant Attorney General, via email: wittenbrink@uchc.edu
April McLean, 4 Park Terrace, Hartford, CT 06106